Case No. 15 at 5202, Noble Energy, Inc. Appellant v. Sally Jewell in her official capacity as Secretary of the Interior at Elm Mr. Rosenbaum for the Appellant, Ms. McFadden for the Appellant May it please the Court, we start this case with a given. As a matter of common law, the Government's material breach discharged Noble of its contractual obligation under Section 22 of the lease to permanently plug the well. This Court is so held. The question presented is, does that breach have the same impact with respect to the closely related regulatory plugging requirement? We believe there are key considerations that lead to the answer being yes and having a focused, proper, narrow effect. No. 1, the relationship here is entirely a result of contract. The Government went to the market and said, if you would like to enter into a lease with us, here are the terms. Absent that, Noble would never have been on the premises, would never have drilled a lease at all. If you're right about that argument, we would not have remanded the case to the agency to interpret its regulation. I think that... Why would we have remanded? Because you still have to look at the regulations and ask the question, is there something in those regulations that is so inconsistent with the application of the discharge rule that the presumption that that rule applies should not apply under these circumstances? That's not what our first opinion said. Our opinion simply said we can't tell what the agency's view about this is, and so we're remanding it to interpret its regulation. And don't we just review that under our standard APA rule that we defer to an agency's interpretation of a regulation if it's reasonable? I don't think you do, but I don't think it's reasonable either. Let me make those two points separately. On the first issue of deference, the Supreme Court has said that the notion that a court should assume an intention that there be deference to an agency is a general presumption about congressional intent. That's what the Supreme Court said in the Martin case at 499 U.S. 151. But here we have other presumptions. I mean, it's a presumption, but we have other presumptions here. Here we have a presumption that says that the common law principles here, the principle of discharge, is to be read into the regulation unless it is evident that there's a contrary intent. I'm just asking you, we have a case here where a previous panel remanded to the agency to do X, right? Yes. Okay. X seems to me to just interpret its regulation. Where in our earlier opinion did we tell it that it had a higher burden? I think you remanded because the— Well, where did we say that? You said that the order did not even attempt to identify what it was in its regulations that it thought meant that the plugging requirement survived. Okay, but where in the order did we say, by the way, not only do you have to interpret it, but you have to show where you have to say that the regulation expressly— It's not expressly. It's not in there, is it? Well, no, because that's not the test. The test is that it has to be—it has to directly— it has to speak directly to the question presented by the common law. Where did we say that in our first— Well, I think it was because the court said that there was no indication that the considerations required by the Texas rule had been applied. That is the requirement of the Texas rule. There's nothing in the decision that indicates that the standard isn't precisely that which Texas articulates. But didn't we already know when we remanded what the regulation said? In other words, if we thought that there was a Texas rule to the effect that it could only be done if it was expressed, then we already knew what the regulation said, so there would have been no point to remanding. But I'm not suggesting the Texas rule is so strict that says it has to be expressed. What the Texas rule says, it has to—the regulation has to speak directly to the question presented by the common law. But the earlier panel could have looked at the regulation and saw that it didn't speak directly to it. So what was the purpose of the remand? Because the agency was—the panel could have done that, but the panel thought that the agency was entitled to identify the specific regulations. Well, it's done that now. It says its own regulations clearly that the regulatory obligations extend beyond the lease. It cites two provisions of the regulation for that. And it cites its own policy. And let me turn to those three particular items, Your Honor, if I could, because there is also, of course, the issue of whether their interpretation is reasonable, even if it were to be given deference. I've expressed why I think that's not the case. But number one, they point to the fact that the plugging obligation survives the termination of the lease. From our perspective, that says nothing. Under the contract itself, the plugging requirement of Section 22 survives the termination of the lease. Both of them say you have to plug within one year after termination of the lease. So to say the regulation says that is to say nothing beyond what the contract says itself. And let me make— Let me ask you this question. Has the lease been terminated or was the lease breached? Are those two things the same? No, they're not the same. Our view is the lease was materially breached, not terminated, in the sense that the regulation has in mind. So why isn't that your argument? Well, that is ultimately our argument in the sense that— Well, I mean, the point you're making is an important one, which is the issue presented here is, do the regulations speak to what happens when the government materially breaches, not to what happens when a lease terminates? We are seeking application of the discharge rule, and the government's argument seems to be that, well, if anything about plugging survives termination, that somehow means the discharge rule doesn't apply. Those are different concepts, and especially here, because you never plug a well until you've stopped producing oil from it. By definition, if you plug the well, there's no oil coming up. Once you stop producing oil, the lease terminates. That's what Section 3 says of the lease. The term of the lease is over once you stop producing, so you'll never be plugging wells except after termination. So to point to a provision in the regulation that calls for plugging wells after termination, A is stating an obvious fact, and B says nothing, we believe, to whether the obligation survives a material breach. Second, the government points to the fact that the regulations make the original SC responsible for plugging as well as the holder of operating rights. That is the common law. There is nothing in that that indicates an intention to do anything beyond the common law. That obligation would exist regardless of the regulations. We have in our brief cited copious decisions under the law of assignment that says an assignment does not absolve the assignor of his obligations, and that's what this regulation says. The regulation also refers to a holder of operating rights, but if one looks at the definition of operating rights, and this is 30 CFR 550.105, operating rights mean any interest held in a lease. A lessee, the term lessee is defined to include a holder of operating rights. There is nothing in that regulatory requirement that expands beyond the common law. So if there is nothing that expands beyond the common law, how can it be that the government has met its obligation to overcome the presumption that the common law should be read into the requirements of the regulation? Third, the government points out the fact that plugging is environmentally important. To us, this is a straw man. We are not disputing the environmental importance of plugging. The question here, but by the same token,  Now, the question here is who has the responsibility to take on that obligation or that function once the government clearly breaches? And we don't own drilling rigs. The government doesn't own drilling rigs. Whoever does it is going to hire a company with a drilling rig who's going to go out there and do it. And the government does this all the time, as we pointed out in their brief. They've done it hundreds of times because they own lands in some places in the western United States. And we don't see the environmental importance as resolving the question. Can I just ask you a conceptual question? So I take it that if the regulation specifically said, even in the event of a material breach by the government, your client or companies in that position would have the obligation to permanently plug, there would be no argument here, right? There would be no argument. So all we're talking about, and so there's no argument that the way the government construes the regulation is in tension with the statute. All we're talking about is whether the way the government construes its regulation is a reasonable interpretation of the regulation. Well, a reasonable interpretation, well, it has to be a reasonable interpretation against the standard established by Texas, which is a very high standard. That is to say you have to show that it directly speaks to the question and that it overcomes the presumption that the regulation is read into it. I mean, Texas is the one who was read into it. I don't know if we need to get into this, but it's sort of interesting to me the way Texas interrelates with regulations because what Texas tells us is when we're trying to construe a statute, we're trying to figure out what Congress intended when it enacted the statute. And one interpretive canon that we build into it is that we don't ordinarily assume that Congress means to breach the common law. But when we're trying to construe a regulation, it's different because the agency can tell us what the regulation means. You can't write a letter to Congress and ask Congress what it meant in the statute. Courts don't ordinarily do that. But with a regulation, we're just trying to figure out what the regulation means. And that was the purpose of the remand. We sent it back precisely so that the agency could tell us what the regulation means, and then we're trying to figure out whether what they tell us about what they think the regulation means is reasonable. Well, but once again, the reasonableness has to be in the context of have they overcome the presumption that the discharge rule? Have they pointed to regulations? But is there a discharge? Is there a common law rule that a material breach of a contract discharges regulatory responsibilities? Is that what? No, but none of the, I mean, this is a question. So what's the common law rule here? Judge Williams did address that issue explicitly, where he said that insofar as the government's argument asks the common law principle have an effect on regulation, it offers no distinction. In both cases, and he was talking about AMRO and AMICO specifically, there was no claim the common law principle directly applied to regulatory obligations. What the argument was that the regulations should be read in light of the common law principles, and that is how the Texas rule operates. But what's the common law principle at work here? At work here is that when there are bilateral obligations established between two parties and one party fails to carry out its obligation, the other party is discharged of its obligation. Right, under the contract. Well, under the contract, but, I mean, every case in which a common law principle has been applied, and I think we identified 13 different cases of different common law principles that have been incorporated under Texas in a statutory or regulatory requirement, in every case those common law principles were developed in the context of non-regulatory, non-statutory relationships, and yet the courts have found those to be incorporated. Okay. If I could make one, two additional points. The regulation, the statute here, the Amaro County Self-Lands Act, is entirely geared, entirely, not partly, entirely geared toward leasing, that leasing meaning contracts. 1337A1 authorizes the secretaries to grant oil and gas leases, and the regulations, which we're talking about here, are promulgated pursuant to 1334A, which says that the secretary may issue regulations which shall apply to all operations conducted under lease. So, Your Honor, I hope that's responsive to your point in the sense that we're not, if there were ever, this is the clearest case in the sense that we're not talking about some sort of general regulatory requirement. We're talking about a regulatory requirement that applies specifically in the context of the statute. But, again, if you were right about that, why did we remand to the agency? I think you remanded to the agency because you wanted them to step forth, not through their lawyers' arguments, but through a decision, what provisions of the regulations it thought were so inconsistent with the discharge rule that the discharge rule should not apply. Didn't the majority opinion in the first opinion say that it wasn't going to give deference, our deference, to arguments made in the briefs? Well, they did. So that was the reason why, to send it back because they weren't going to accept the post hoc arguments, so to speak, of the agency in its briefs? Yes, that's correct. But we have two separate arguments why we think we win. One is we think their explanations are not reasonable. For the reasons I've given, you cannot point to any of these three provisions and say, oh, yes, that must mean that the obligation continues notwithstanding the material breach. We also are of the view that in a case of this nature, where deference to an agency has been described as a presumption of congressional intent and we're here under the Texas rule, you have conflicting presumptions, then we think there is far less of any deference to the agency. Thank you. Okay, thanks. Good morning, Your Honors, and may it please the Court. Lane McFadden for the Federal Appellees. This Court's remand opinion in No. 2 was quite clear and quite straightforward. It said on page 1245 that nothing in the agency's other regulations has clearly addressed this question and asked the agency to address it in the first instance, as is the agency's right when interpreting its own regulations. You now have a decision from the Bureau of Safety and Environmental Enforcement. It's a JA 155, and that explains the agency's reasoning, which is twofold. One, it reviewed the regulations in their entirety and found that the entire regulatory scheme is premised on the idea that the regulatory obligations accrued by a lessee are independent of their status as a current lessee. I don't understand that argument because regulations are promulgated pursuant to 1344. That's what Part 250 says is the authority. 1344 applies to administration of leases. None of these provisions apply to anything unless somebody's got a lease, right? Right. Yes, Your Honor, the obligations are accrued once someone takes a lease. So how can you say that the obligations are independent of the lease or of the contract? Because in numerous places, the decommissioning obligations, which are an exercise not just of 1334 but also Section 1348 of the Outer Continental Shelf Lands Act, which governs conservation of the oceans. Regulations don't cite 1348. They cite 1344. Okay. Well, then we'll stick to 1344. Are you disputing that? No, Your Honor. I'm not. Those regulations are constructed in such a way that the regulatory obligations for decommissioning, which we're talking about specifically, accrue at the outset of taking a lease or drilling a well or the conduct of other activities by lessees. And then 30 CFR 250.1701 says those obligations continue until they are met. And as Counsel for Noble pointed out, in the normal course of events, you don't still have a lease when you're permanently decommissioning a well. And there are a number of other parties who are former lessees or other holders of rights but that don't have a lease in their hand but that still have some regulatory duty to decommission a well. There are a number of circumstances in which that is the case. And there are no contrary circumstances. There's no part of the regulation that says these obligations are met once you are no longer the leaseholder. Is a breach of the contract the same as termination of a contract? No, they are different. But they are different for purposes of contractual reasons. But your regulation says decommissioning obligations are pursuant to the termination of a contract. That's what the regulation says. There's a regulation that says that they continue after termination. There's a regulation that says they continue after assignment. There is no regulation, unfortunately, that addresses material breach. Then that seems to answer the question in the negative with respect to what we have defined under US v. Texas, doesn't it? No, Your Honor, because the common law principle that is being urged by Noble here is exclusive to performance of duties under an exchange of promises. It is strictly a contract theory. It's stated in the second restatement of contracts in Section 237. And it is quite exclusive to those exchange for promises. And so we have, consistent with that principle, absolved them of their contractual duties, which are not just Section 222's obligation to decommission, but also annual rent payments, the obligation to produce oil or discover it at a certain frequency. Those are all no longer their obligations, and we have paid them restitution as a result of the breach. So the common law principle of contractual discharge of the duty to render performances, as it is more accurately described, because that is the principle, has been fulfilled. But the government is not exclusively a private actor in the market. And while courts have held that its contractual relationships with lessors should be construed consistent with the common law governing contracts, and no one disputes that, the government is also at the same time a sovereign, with authority over activities conducted on the outer continental shelf. Okay, but you are relying upon 30 CFR 250.17.10, right? Yes, in part, yes. That's the you must decommission within one year of termination. It says you must permanently plug all wells on the lease within one year after the lease terminates. Correct. When did this lease terminate? This lease wasn't terminated. And how does this regulation have anything to do with the obligation you're seeking to impose on them? It was cited by the Bureau of Safety and Environmental Enforcement in its description of the regulatory scheme. The appropriate regulation, and I don't have the number in front of me, is a later regulation in that subchapter that allows the Department of the Interior to direct a party to permanently decommission a well. And that is the authority under which the order was issued. What's your answer to Goebbels, Texas, that, as I understand their argument, that this was a remand not under the normal standards for reviewing agency interpretations of their own regulations, but that Texas put an increased burden on the agency to find, to explain where its regulation directly abrogated? What's your answer to that? I don't think this Court's opinion reflects that. This Court used very basic APA principles in its remand, stating that, in the general sense, an agency is entitled to interpret regulations in the first instance, and that while this Court might normally owe some deference to that regulation's interpretation, it did not at the time have any interpretation before you. The regulations were silent as to this particular factual circumstance, and the agency's order letter that you were reviewing at the time, issued by the prior agency, the Minerals Management Service, didn't specifically address any interpretation of the regulations. And this Court, under basic APA principles … Well, the Texas is a Supreme Court decision. I mean, it applies in any event. So, do you think … did the agency … I guess my question is this. In the agency's interpretation, is it your position that, you know, there is no common law rule here that relieves a party of regulatory obligations, and therefore, Texas just doesn't apply? That is the position, Your Honor. There's no applicable common law principle, and so there was nothing that the regulations needed to expressly address. The admission in Texas that Congress has to explicitly abrogate a common law principle, and it can't do so by implication, doesn't apply when there's no common law principle that governs this particular set of factual circumstances. Then why did we remand? I mean, that seems to me to completely ignore the first holding of this Court. Well, no, Your Honor. I mean, this Court said we have before us a situation that is unlike those explicitly addressed. Termination, as you pointed out, and assignation are addressed, but a breach of contract that results in the contract no longer being valid is not explicitly addressed, and we would like the agency to explain what its regulations describe as the outcome. I thought the basis for the remand was that if the Texas rule governs contract and the regulation does nothing more than the contract, then the Texas rule governs the regulation too, right? So the question is, does the regulation do anything more than the contract? If it does do more than the contract, then Texas is not binding on the regulation. But if it does the same thing as the contract, we already know what Texas does to the contract. Ergo, it must do the same thing to the regulation. That's correct, Your Honor. There was that question asked of the agency to determine whether its regulations were independent of the contract, to use this Court's language, and the agency concluded that indeed they were for the reasons given. And I do want to point out that, you know, the description of the regulatory scheme, which sort of overlays the contract, that there has been the suggestion that first there is the contract and the regulations are a supplement, but that is the reverse of how it works. You have regulatory duties, like, for example, to provide a bond before you can even enter into the contract. So you still have to identify the regulation if we accept that. And in the colloquy with Judge Wilkins earlier, he asked the question about which particular regulation, and in addition to the one that deals with one year post, and is that, what is the regulation? It's 250.1711, Your Honor. It's what? 30 CFR 250.1711 allows the Bureau of Safety and Environment Enforcement now to order a well-being permanently plugged if it poses a hazard to safety in the environment or is not useful for leave aspirations or is not capable of production in paying quantities. Is that one cited in the order? It is, yes, Your Honor. J.A. 158 in the middle of the page. It's not cited in your brief. Well, there was never any question raised by Noble as to the authority of the agency either to promulgate these regulations or to impose them. The question presented in the appellant's brief was merely whether they are excused from that duty because of a contractual discharge theory. No one has ever suggested that the agency has improperly exercised its regulatory authority here, and the regulatory authority is plainly cited in the agency's order to Noble Energy. Anything else? No. All right. Nothing? Okay. Thank you. Thank you, Your Honor. Did Mr. Rosenbaum have any time left? No, he did not. You can take one minute if you'd like it. The mere fact that the duty to plug and abandon or plug survives termination is no different than, for example, a non-compete clause in a contract, which typically will survive the termination of the underlying agreement. It says nothing about what the effect is of a material breach by the other party. We do believe that the court in this court previously specifically said that one of the reasons for the remand was there was no word in MMS's letter indicating that it considered the common law doctrine of discharge. That seems to us, following discussion of the Texas doctrine, to indicate an acceptance that the Texas doctrine does apply, and the question is whether or not the government could come up with an explanation why the requirements it imposed were inconsistent with discharge. The obligation is no clearer in the regulation than it is in the contract, and yet everyone concedes the contractual obligation has been vitiated. Under those conditions, there is simply nothing in the regulations that indicates that discharge does not apply. Okay. Thank you. The case is submitted. Thank you both.
judges: Tatel, Srinivasan, Wilkins